IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ELECTRONICALLY FILED
May 04 2018
U.S. DISTRICT COURT
Northern District of WV

JEREMIAH SHANE and CIERRA SHANE,  )

      Plaintiffs,  )  Civil Action No. 5:18-CV-82 (Stamp)

v.  )

THERMOS®, L.L.C.  )

      Defendant.  )  JURY TRIAL DEMANDED

## COMPLAINT

COMES NOW, Plaintiffs Jeramiah Shane and Cierra Shane and complain of Defendant Thermos®, LLC as follows:

## PARTIES

1. Plaintiffs are citizens and residents of Wellsburg, Brooke County, West Virginia.

2. Defendant Thermos®, LLC is a foreign corporation organized pursuant to the laws of the State of Illinois.

## JURISDICTION AND VENUE

3. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship among the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue is proper in this Court under 28 U.S.C § 1391(a), in that a substantial part of the events or omissions giving rise to the claim occurred within the Northern District of West Virginia.

5. This Court has personal jurisdiction over the Defendant, Thermos®, LLC pursuant to West Virginia Code § 56-3-33(a)(4) inasmuch as the Defendant: (a) regularly conducts or solicits business in West Virginia, and/or engages in other persistent courses of conduct in West Virginia, and/or derive substantial revenue from goods used or consumed in West Virginia, and (b) have caused tortious injury to the Plaintiffs in West Virginia.

## FACTS

6. This case involves personal injuries sustained by Jeremiah Shane on or about January 12, 2017.

7. On or about March 4, 2016, Plaintiffs purchased a Thermos® brand food jar (the "Subject Thermos®").

8. On or about January 12, 2017, Jeremiah Shane was attempting to open the Subject Thermos® in Wellsburg, Brooke County, West Virginia.

9. The Subject Thermos® was equipped with a screw on/screw off lid, which completely detaches from the food jar.

10. While attempting to open the container, the Subject Thermos® suddenly and unexpectedly exploded propelling the lid into Jeremiah Shane's eye and face.

11. Upon information and belief, unexpected pressure built up inside the Subject Thermos® essentially converted the food container into a pipe bomb and the lid into a dangerous projectile.

12. As a direct and proximate result of the sudden and unexpected explosion of the Subject Thermos®, Jeremiah Shane suffered severe and permanent injuries to his face and eye, including but not limited to causing him to lose vision to one of his eyes.

13. That as a direct and proximate result of the tortious actions and inactions of the Defendant, the Plaintiff, Jeremiah Shane, has suffered the following damages in the past, still suffers these damages in the present, and will suffer these damages in the future:

   a. Physical pain and suffering from the incident, including permanent loss of vision to his left eye and the physical pain associated with the ongoing medical treatment, prior surgeries and subsequent surgeries;

   b. Permanent scarring and disfigurement;

   c. Lost wages;

   d. Loss of future earnings;

   e. Mental anguish;

   f. Emotional distress;

   g. Medical bills and special costs; and

   h. Loss of capacity to enjoy life as before the subject incident.

## COUNT ONE

### DEFENDANT'S PRIOR KNOWLEDGE OF THE DEFECT

14. Defendant should have known, and did in fact know, that their Thermos® products, including the Subject Thermos® could and would explode because of pressure build up from fermentation and/or decomposition of food products stored in them.

15. For example, Defendant had actual and/or constructive knowledge of the following incidents:

   a. In August 2013, Scott Pukos, then a staff writer at The Cubicle Post, published a news story titled "The Great Soup Incident of 2013." In that post, Mr. Pukos described the explosion of a Thermos® product in which

        he was storing chicken soup. After trying unsuccessfully to open the Thermos®, Mr. Pukos set the container down and about 30 minutes later, the Thermos® exploded: "the lid shot straight up and crashed into the ceiling tile, which is about 8-feet from my desk. It left a hole in the ceiling."

    b.    In March 2015, a Thermos® product containing chicken curry exploded at the Alderwood Middle School in Lynwood, Washington. A Thermos® spokesperson responded to the news report and asked "if you could please have the consumer contact Thermos® directly to provide us with more specifics we could investigate further." Regardless of whether Thermos® investigated this report, it was on notice that its product had spontaneously exploded.

    c.    The popular website YouTube.com contains video posted in May 2009 called "Aftermath of Exploding Thermos®." That video shows, among other things a cap lodged in a kitchen ceiling from the Thermos® exploding. Numerous comments follow the video describing similar incidents.

    d.    Other similar incidents are expected to be discovered as the case progresses.

16.    In addition, at some point in time, the packaging containing warnings began to reference possible pressure build up which warning had not been included previously.

## COUNT TWO

## STRICT LIABILITY - DEFECTIVE DESIGN

17.    Plaintiffs repeat and incorporate by reference all preceding allegations as if fully set forth herein.

18. Defendant designed, manufactured, assembled, sold, distributed and/or placed into the stream of commerce the Subject Thermos®, which was used by Plaintiffs in the manner for which it was designed, manufactured, marketed and which was foreseeable by Defendant.

19. The Subject Thermos® was not reasonably safe from the time it was designed, manufactured and marketed.

20. The Subject Thermos'® unreasonably unsafe design rendered it unfit for its intended or reasonably foreseeable purposes, thereby subjecting consumers, including Plaintiffs, to risks which greatly exceeded the Subject Thermos'® benefits.

21. The Subject Thermos® was not designed such that pressure inside the food jar would be released prior to opening of the lid so to avoid the lid becoming a projectile capable of causing serious injury.

22. The Subject Thermos® had no mechanism or design to safely release pressure from inside the food jar if it reached an unsafe level.

23. The Subject Thermos® was inadequately designed, manufactured and tested before it was placed into the stream of commerce and into the hands of customers who were unaware of the severe design defect.

24. At all times relevant, the Subject Thermos® food jar was being used in the manner and for the purposes for which it was intended, and Defendant knew, or with reasonable care and diligence should have reasonably anticipated, that the Subject Thermos® food jar would be used in the manner it was being used by Plaintiffs.

25. There are significantly safer, feasible and cost-effective alternative designs for the Subject Thermos® food jar.  Similar containers in the marketplace are manufactured with demonstrably safer designs and incorporate one or more ways in which pressure can be released

inside the vessel or to eliminate the risk that the lid would become a projectile capable of causing serious injury.

26. As a direct and proximate result of the defective and unsafe condition of the Subject Thermos® food jar, Plaintiff Jeremiah Shane has been caused to endure and with reasonable certainty, will in the future incur, suffer and undergo severe, painful, debilitating and disfiguring physical injuries, mental anguish, pain and suffering, loss of enjoyment of life, significant medical bills and expenses, lost wages, and loss of future earnings capacity.

27. As the Subject Thermos® food jar was not reasonably safe for its intended and foreseeable use as aforesaid, the Defendant, who controlled its design, manufacturing, engineering, and testing and who sold, distributed and marketed the Subject Thermos® food jar is strictly liable to the Plaintiffs as the defective Subject Thermos® food jar proximately caused all damages set forth herein.

## COUNT THREE

### STRICT LIABILITY - FAILURE TO WARN OF THE RISK(S) ASSOCIATED WITH THE BUILDING UP OF PRESSURE WITHIN THE THERMOS® FOOD JAR AND SUBJECT THERMOS'® DESIGN DEFECTS

28. Plaintiffs repeat and incorporate by reference all preceding allegations as if fully set forth herein.

29. Adequate and conspicuous warnings were required to address both the increased risk of sustaining an injury due to the defective design/manufacturing of the Subject Thermos'® screw on/screw off lid/cap and the increased risk of pressure building up within the subject food jar due to its defective design.

30. Adequate and conspicuous warnings would have included a warning label on the outside of the container notifying users of a likelihood of pressure building up within the food jar

and the substantial risk of sustaining bodily injuries during the use of the food jar, particularly when opening the subject food jar.

31. Further, an adequate and conspicuous warning should have been included within the owner's operational materials to include a warning that normal and foreseeable use of the food jar could result in an explosion of the lid, which could result in injury or death of the user of the Subject Thermos®.

32. The requirement of the aforesaid warnings is critical since the average consumer would not be expected to know or anticipate that the normal use of the food jar could result in the lid becoming a dangerous projectile capable of causing severe injury.

33. Defendant's failure to warn the Plaintiffs of said defects proximately caused the damages set forth herein.

## COUNT FOUR

## NEGLIGENCE

34. Plaintiffs repeat and incorporate by reference all preceding allegations as if fully set forth herein.

35. Defendant had a duty to design, manufacture, and distribute products, including the lid/cap and all components of the Subject Thermos® to be reasonably safe for its intended purposes.

36. Defendant had a further duty to adequately warn Plaintiffs and others of unexpected, and unreasonable dangers associated with the use of the Subject Thermos®.

37. Defendant breached its duty to exercise reasonable care and diligence, and were therefore negligent in performance of its duties to Plaintiffs and others in the following respects:

    a.    Negligently incorporating multiple defects in the design of the Subject Thermos®, including but not limited to lid/cap of the Subject Thermos®;

    b.    Negligently incorporating multiple defects in the manufacturing of the lid/cap of the Subject Thermos®;

    c.    Negligently failing to warn Plaintiffs of the defective nature of the Subject Thermos® food jar;

    d.    Failing to adequately test the Subject Thermos® and the lid/cap; and

    e.    Failing to inspect the Subject Thermos® and the lid/cap.

40.    Defendant knew, or in the exercise of ordinary care should have known, that the Subject Thermos® was defective and not safe for their intended purposes.

41.    As a direct and proximate result of Defendant's negligence, the Plaintiff Jeremiah Shane has been caused to endure and with reasonable certainty, will in the future incur, suffer and undergo severe, painful, debilitating and disfiguring physical injuries, mental anguish, pain and suffering, loss of enjoyment of life, significant medical bills and expenses, lost wages, and loss of future earnings capacity.

## COUNT FIVE

## LOSS OF SPOUSAL CONSORTIUM

42.    Plaintiffs repeat and incorporate by reference all preceding allegations as if fully set forth herein.

43.    As a result of the injuries to her husband, Plaintiff Cierra Shane, has suffered severe mental anguish and loss of enjoyment of life.

44. Further, as a direct and proximate result of the injuries to her husband, Plaintiff Cierra Shane has also incurred loss of household services, society and consortium of her husband in the past, which she will continue to experience into the future.

45. Defendant's actions and omissions proximately caused the losses sustained by Plaintiff Cierra Shane.

## COUNT SIX

## PUNITIVE DAMAGES

46. Plaintiffs repeat and incorporate by reference all preceding allegations as if fully set forth herein.

47. Defendant had knowledge of the defects alleged herein from other allegations, including lid/cap explosions, and publicly available social media forum posts concerning these dangerous design and manufacturing defects.

48. Defendant knew that introduction of the Subject Thermos® with its improper design would increase the likelihood of and severity of any injury sustained when a consumer would attempt to open the Subject Thermos® lid.

49. Defendant, despite the alleged defects, failed to recall the Thermos® or notify owners of the Thermos® or the public in general of the existence of said defects.

50. To the present date, Defendant has not recalled the defective Thermos®, nor notified owners of these Thermos® food jars of the existence of said defects.

51. Defendant's failure to acknowledge or remedy the existence of a known defect evidences an intentional, willful, wanton and callous disregard for the health, safety and welfare of those persons, such as the Plaintiffs, who own and use the product on a regular basis.

52.     Defendant's intentional, willful, wanton and callous disregard as set forth herein entitles the Plaintiffs to an award of punitive and exemplary damages.

WHEREFORE, Plaintiffs, Jeremiah Shane and Cierra Shane, demand judgment against Defendant, Thermos® LLC, for compensatory damages in an amount to be determined by a fair and impartial jury; for exemplary and punitive damages in an amount to be decided by a jury; prejudgment interest at the legal rate set forth by statute; post judgment interest; costs and attorney fees incurred in the prosecution of this action; and such further relief as the Court deems just and proper.

**A JURY TRIAL IS DEMANDED**

JEREMIAH SHANE and CIERRA SHANE.
By Counsel,


*/s/ P. Gregory Haddad*
P. Gregory Haddad (WV Bar 5384)
Kerrie Boyle (WV Bar 9439)
BAILEY & GLASSER, LLP
6 Canyon Rd., Suite 200
Morgantown, WV 26508
Telephone: (304) 594-0087
Facsimile:  (304) 594-9709
ghaddad@baileyglasser.com
kboyle@baileyglasser.com

Scott Radman (WV Bar #7623)
6 Canyon Rd., Suite 200
Morgantown, WV 26508
Telephone: (304) 594-2100
Facsimile:  (304) 594-2100
*Counsel for Plaintiffs*